**CASE INSTITUTE OF TECHNOLOGY, Tax Exemption, In re.**

Board of Tax Appeals.

No. 42162.    Decided April 5, 1960.

Henderson, Quail, Schneider & Peirce, By John V. Fels, Cleveland, for the applicant.

John T. Corrigan, Pros. Atty., By George W. Leddon, Asst. Pros. Atty., Cleveland, for the county.

## OPINION

This cause and matter came on to be heard and considered by the Board of Tax Appeals on the application filed herein under date of December 14, 1959, by the Case Institute of Technology, Cleveland, Ohio, for the exemption of certain real property from taxation for the tax year 1959.

The property in question consists of a parcel of land having a frontage of 100.50 feet and a depth of 164.6 feet on East 107th Street, Cleveland, Ohio, and known as the northeast corner of East 107th Street and Deering Avenue. Said parcel is identified in the Cuyahoga County Auditor's records as being Permanent Parcel No. 121-23-2 and is located due west of the Case Campus, approximately 2½ to 3 blocks away, being separated therefrom by several lots and by East Boulevard, a very wide, divided highway at that point.

This cause was submitted to the Board of Tax Appeals upon the application and on the testimony and evidence supporting same at a hearing before the Board at Cleveland, Ohio, on Friday, January 29, 1960, and on briefs of counsel.

The record shows that the property in question was acquired by the applicant in 1913, at which time it had been improved with a building that had been shortly thereafter converted into a gymnasium for use by the applicant and that said use had continued until 1957 when applicant had completed construction of a new gymnasium at another site. As a result of the cessation of the use of the building on the property in question, the real property was placed on the tax duplicate for the tax year 1958. Applicant contends that the property had not been offered for sale subsequently thereto and that on January 1, 1959, it held the same with the intention of devoting it to educational and charitable purposes. Applicant further maintains that at no time was the property used for any non-exempt or commercial use, nor was any such use contemplated.

The record further shows that in the early part of 1959 applicant decided to raze said building and use the premises for student parking purposes. Sometime during the summer of 1959 the building was demolished and by September, 1959, the property was conditioned and paved for Case-Student parking purposes. Thereafter, from September 15, 1959, 55·of applicant's students commenced using the parking lot on a rental basis whereby each student was charged for its use at the rate of $25.00 per school year or $12.50 per semester.

For the purpose of this hearing, the Board assumes that Case Institute of Technology is an "institution" as referred to in §5709.12 R. C., the pertinent part of which provides as follows:

"* * *. Real and tangible personal property belonging to institutions that is **used exclusively for charitable purposes** shall be exempt from taxation." (Emphasis added.)

In interpreting the full purport of this quoted portion of §5709.12 R. C., Ohio's Supreme Court has consistently held that **not all property** which is owned by institutions, as referred to in the above Code section, is exempt. It is only that property, or part thereof, which is used exclusively for charitable purposes that may be exempted from taxation.

This matter presents two questions to the Board, the first being as follows:

**"How was the property 'used' on January 1st, 1959, tax lien date?"**

Applicant makes repeated reference to its "intent" as of January 1st, 1959, to use the property for educational and charitable purposes, as is borne out in its response to question No. 9, in the submited application, and also through the testimony of applicant's witness, its vice-president for Finance and Administration, who, in direct examination, testified as follows:

"Q. Can you tell us when Case acquired the property?

"A. Years ago. I believe it was about 1913.

"Q. And what use was made of the property?

"A. Well, for many years it was used as a gymnasium for students and faculty.

"Q. What had the building been originally?

"A. It had originally been a church and after Case acquired it, it was converted over for the educational purposes I have just mentioned.

"Q. How long did Case use the building as a gymnasium?

"A. Well, until we built a new building in 1957, at which time it was abandoned as a gymnasium.

"Q. Was any use made of the building thereafter?

"A. No, it remained dormant.

"Q. Was it offered for sale at any time?

"A. No, sir.

"Q. Was it offered for rent?

"A. No, sir.

"Q. What was Case's purpose in holding it?

"A. Well, Case knew that we have a rather ambitious program of furthering our educational activities and we could see that we had crowded conditions developing on the campus and as a result we figured that it would probably be used as a parking area for students."

It is quite clear that the applicant's view is that such intent, coupled with no actual non-exempt or commercial use, is the governing factor to be relied upon as appears to be set forth in the Supreme Court's decision in the case of **Carney, Aud., v. Cleveland City School District Public Library, 169 Oh St 65.**

However, it must be borne in mind not only that said decision, which on its face appears to be far reaching, was not rendered by the court until April 1st, 1959, but also that if the property had been deemed taxable, because of its admitted non-use during the tax year 1958 and the taxes due thereon had been paid, as was done in the case at bar, then such taxable status must be held to have continued until the early part of 1959 when its non-use had ended with the commencement of the parking lot development. Then too, if the Board were to accept appli-

cant's claim, which it does not, that the above stated intent of the applicant should govern the change in use as of tax lien date in 1959, or that applicant's reference to the commencement of its parking lot development as having been early in 1959 to mean that said commencement was in effect on January 1st, 1959, then, the Board of Tax Appeals must conclude as is hereinafter set forth.

The second question before the Board may be stated as follows:

"Is an 'institution's' parking lot which is used for the parking of students' automobiles, for which use such students are charged fees or rent, 'property used exclusively for charitable purposes,' within the meaning of §5709.12 R. C.?"

The matter of exempting parking lots, which are owned and operated by charitable institutions, has given this Board serious concern for many years. The Board has been inclined to question the exemptibility of such property for the reason that to hold this type of use to be exclusively for charitable purposes is an unreasonable and unwarranted interpretation of the legislative intent existing at the time that this section of the Code was enacted into law. However, to offset this view. the Board took cognizance of the fact that in recent years such institutions, as well as other entities, covered by statute to qualify for a tax-exempt status, have been confronted with the growing demand of affording off-street parking accommodations to its patrons, visitors and personnel. That demand has become so great that it is generally deemed that such facilities are now a necessity, and therefore, a proper use in keeping with the purport of applicable taxable laws. Nevertheless, we have consistently maintained that in those situations where charges are made for the use of parking facilities. applications for exemption of such property from taxation must be denied because the actual use of the property is to produce income.

Two of Ohio's leading cases pertaining to the use of charitable institutions' property to produce income are The Incorporated Trustees of the Gospel Worker Society v. Evatt, 140 Oh St 185 and The Welfare Federation of Cleveland v. Glander, 146 Oh St 146.

In the Gospel Worker Society case the Supreme Court held as follows:

"1. Property belonging to a charitable institution may not be exempted from taxation unless it is used exclusively for charitable purposes.

"2. Under Section 2, Article XII, Ohio Constitution, and §5353 GC, (now §5709.12 R. C.), property which is used to produce income to be used exclusively for charitable purposes may not be exempted from taxation. The test is the present use of the property rather than the ultimate use of proceeds received from the property sought to be exempted."

In the Welfare Federation case, the court held:

"4. The test to be applied when the exemption of property from taxation is sought by an institution used exclusively for charitable purposes is the present exclusive use of such property for charitable purposes. The renting of any portion of a separate parcel of real estate forfeits the right to exemption even though the proceeds of such rental are devoted to charitable purposes."

The evidence as submitted establishes the fact that the parking lot in question is used by a group of students of the applicant rather than by Case Institute of Technology; and because the students must pay a charge for the privilege of parking on said premises the Board concludes that there is a commercial or non-exempt use of the same.

For the reasons above stated, this Board makes a specific finding that the real property in question is not property used exclusively for charitable purposes, and concludes that the application must be, and hereby is, denied.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation this day taken with respect to the above matter.

Ronald R. Calhoun,
SECRETARY